[Crim. No. 449. Third Appellate District.—October 23, 1918.]

## THE PEOPLE, Respondent, v. N. E. EPPERSON, Appellant.

CRIMINAL LAW—INTOXICATING LIQUORS—LOCAL OPTION—SELLING AND FURNISHING WHISKY—INFORMATION.—An information charging a defendant with violation of the "Wyllie Local Option Law" (Stats. 1911, p. 602), in that he did unlawfully "sell and furnish" whisky to a person named, in a city which was then "no-license territory," did not charge two separate offenses of "selling" whisky and "furnishing" whisky, and orders overruling a demurrer to such an information and denying a motion to compel the district attorney to elect on which charge the defendant should be tried were not erroneous.

ID.—INSTRUCTIONS.—Refusals of requested instructions were not prejudicial when the instructions requested were sufficiently covered by others already given, or merely involved an amplification of the rule of reasonable doubt, which the court had explained to the jury in language which could not be misunderstood.

APPEAL from a judgment of the Superior Court of Tehama County. John F. Ellison, Judge.

The facts are stated in the opinion of the court.

James M. Lee, for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

HART, J.—Defendant was convicted, in the superior court of Tehama County, upon an information which charged that he "did willfully and unlawfully sell and furnish to one C. H. Tolley, whisky, an alcoholic beverage containing one per cent or more by volume of alcohol," in the city of Red Bluff, which was then and there "no-license territory." From a judgment imposed upon him of imprisonment in the county jail, defendant appeals.

The first point made by appellant is that the information charges two separate and distinct offenses, to wit, "selling whisky" and "furnishing whisky," which should have been separately stated. This point was raised upon demurrer to the information, by a motion that the district attorney should

"set out his separate counts," by a motion that the district attorney should elect which of the two charges defendant would be tried upon, upon a motion for a new trial and by a motion in arrest of judgment.

It is further claimed that the court erred to the serious detriment to the substantial rights of the accused in its action in giving and refusing to give certain instructions.

The facts need not be stated in detail, it being sufficient to say that the defendant was seen and caught by the officers in the act of selling or furnishing one Tolley with a bottle of whisky, in the city of Red Bluff, which, as the information states, is situated in "no-license" territory, on the eighth day of December, 1917. The evidence against the defendant was apparently so convincingly indicative of his guilt that the verdict, so far as the evidence is concerned, appears to be the only one that could justly have been returned.

In support of the point that the information charges two separate and distinct offenses, without separately stating them, and that the order overruling the demurrer on that ground and the denial of his motion for an order requiring the district attorney to make an election of the particular offense of the two charged upon which he intended to rely for a conviction were erroneous and prejudicial, the defendant cites the case of *People* v. *Plath,* 166 Cal. 227, [135 Pac. 954]. In that case the defendant was charged by an indictment with violating all the provisions contained in six different subdivisions of section 337a of the Penal Code. The ultimate design of said section was to penalize and thus put a stop to pool-selling on horse-races and other sports usually played for money or on wagers, but each of the subdivisions thereof, which are connected by the disjunctive "or," describes an act or acts different from that or those described in the others as constituting a crime, although all have ultimate relation to pool-selling. In other words, as was held in *Ex parte Roberts,* 157 Cal. 472, [108 Pac. 315], said section contains a description of as many different offenses as there are subdivisions thereof, and the several offenses so described "are apparently as distinct and independent of each other as if they had been enacted in separate sections." Hence, it was held in the Plath case that the order of the trial court sustaining the demurrer to the indictment upon the ground

that more than one offense was improperly charged therein was sound and could, therefore, not be disturbed.

The information in this case is based on section 13 of the statute of 1911, commonly known as the "Wyllie Local Option Law." (Stats. 1911, p. 602.) The language of said section, so far as it is pertinent to the present inquiry, is: "It shall be unlawful for any person . . . to sell, furnish, distribute or give away any alcoholic liquors except as provided in section 16 hereof." The foregoing section of the local option law is, it will be observed, wholly dissimilar to section 337a of the Penal Code. It does not, like the code section, contain an enumeration, in different subdivisions, of a number of entirely different and dissimilar acts, each of which of itself constitutes an offense lacking the essential elements of any one of the other acts enumerated and penalized as public offenses. The charge in the information under review that the defendant did sell and furnish alcoholic liquor to said Tolley does not necessarily involve the statement of two separate and distinct offenses. To furnish a person with any article is to supply or provide him with such article (Webster's Dictionary), and, therefore, whether a person sells or gives to another alcoholic liquor, he at the same time necessarily furnishes such person with such liquor. The object of the so-called Wyllie law is to put a stop to the trafficking in alcoholic liquors in any manner or form or degree in those subdivisions of the state that have regularly adopted its provisions, and to that end section 13 of said act specifically enumerates the various ways in which a transfer of such liquors may not be made by one to another. The word "furnish" is broader than the words "sell" and "give," as they are used in the statute, and if said word had been the only one used in the statute as it now otherwise reads—that is, if the words "sell" and "give" were not therein used and in their place the word "furnish" was alone employed—it would not for a moment be doubted that a person who had sold or given any alcoholic liquor to another could be convicted of a violation of the statute by thus *furnishing* to the other person such liquor, if he were charged in the indictment or information with furnishing such liquor to another.

The above construction of the information here harmonizes with that given the accusatory pleading in *People* v. *Harrold,* 84 Cal. 567, [24 Pac. 106], where an indictment for

forgery charged that the defendant ."did . . . make, alter, forge and counterfeit a certain bill of sale," etc.; in *People* v. *Gosset,* 93 Cal. 642, [29 Pac. 246], where it was charged that the defendant "did.deal, play, carry on and conduct" a certain prohibited game; and in *People* v. *Faust,* 113 Cal. 172, [45 Pac. 261], where the charge was that the defendant "did willfully and unlawfully sell and furnish intoxicating liquor, to wit, whisky, to two Indians."

But assuming, merely for the sake of argument, that in a legal sense it was wrong to charge that the accused sold *and* furnished the alcoholic liquor to Tolley, still it cannot be held that the defendant was prejudiced thereby. The primary and important rule in criminal pleading is to charge a public offense in such clear language as to enable the accused readily to understand and know, upon his arraignment thereunder, the charge to which he must answer and against which he must prepare to defend. In this case, the defendant could not have experienced the slightest difficulty in understanding, upon reading the information, or having it read to him, that thereby he was charged with furnishing in some manner or under certain circumstances alcoholic liquor to another in no-license territory, and whether he sold or otherwise furnished it to the other party, he could just as readily prepare to defend against the charge in the one case as in the other. Moreover, even if justly it may be held that it was error not to sustain the demurrer to the information on the ground that it is obnoxious to the objection that it charges two distinct offenses without separately stating them, and that the court further erred in not requiring the district attorney to elect and declare upon which of the two offenses he intended to rely for a conviction, it cannot be said, in view of the convincing proof of the defendant's guilt, that a miscarriage of justice resulted from said errors. (Const., art. VI, sec. 4½.)

In instructing the jury, the court declared that the "Wyllie Local Option Law" makes it a crime for anyone to sell, give away, or furnish to another, any alcoholic liquors in what is termed no-license territory. It is here argued that said instruction is erroneous and was prejudicial to the accused, inasmuch, so it is declared, as the court thus told the jury that "the defendant was being tried on both charges in the information." There was no error in giving the instruction.

The instruction merely repeats the language of the law declaring it to be unlawful for anyone to dispense in the manner described therein alcoholic liquors in no-license territory. The statute as read was the basis of the charge upon which the defendant was being tried, and it was obviously the duty of the court to enlighten the jury upon the question. As to the effect of the instruction with respect to the specific averments of the information—that is, whether from it the jury could have concluded, and perhaps did conclude, that the defendant could properly be convicted if he was shown to have furnished Tolley with intoxicating liquor either by selling or giving it to him—the reply is that, as above declared, the charge that he "did sell and furnish," etc., involved the statement of but a single offense under the statute.

It is next contended that the disallowance of defendant's requested instruction No. 34 involved error and was prejudicial, since, so it is said, the propositions therein stated were correct and pertinent and were not covered by the court's charge. The instruction, if given, would have told the jury that, upon retiring, after the submission of the case to them, it would be their duty to consult with one another about the case, the evidence, etc., and that if there arose any difference of opinion between them as to what the verdict should be, it would "be their duty to talk over the case carefully," etc.; that "if, after such consultation and discussion, . . . any one or a number of the jurors should be of the opinion that the defendant has not been proved guilty by the evidence in the case to a moral certainty and beyond a reasonable doubt, those entertaining that opinion should vote in favor of a verdict of not guilty, and should adhere to their own opinion until convinced beyond a reasonable doubt that they are wrong."

The first part of said instruction involved a mere commonplace, in that it would have told the jury to do that which they should know without being told, viz., to consider the evidence carefully and consult with each other if a difference of opinion arose between them as to the effect or probative value of the evidence. Moreover, the court in its charge (instruction No. 16) instructed the jury that it was their duty to consider the evidence with care and consult with each other upon all questions thereupon arising. As to the second part of the instruction, the proposition therein stated was covered by the instruction that the jury would not be legally justified in find-

ing a verdict of guilty unless they were convinced by the evidence beyond a reasonable doubt that the defendant was guilty. This instruction was sufficient to inform any person of sufficient intelligence to serve as a trial juror that it was his duty to adhere to his conviction if he had a reasonable doubt of the defendant's guilt, notwithstanding that the other jurors might be of the opinion that the defendant's guilt had been established by the requisite degree of proof.

Instruction No. 33, requested by defendant, stated the rule as declared in section 2052 of the Code of Civil Procedure, to wit: That "a witness may also be impeached by evidence that he has made, at other times, statements inconsistent, with his present testimony," etc. The court refused said instruction on the ground that the proposition' announced thereby was "substantially given elsewhere." The court read to the jury an instruction based on section 2051 of the Code of Civil Procedure, and we think that that instruction sufficiently covered the principle declared in the rejected instruction, although we are of the opinion that the latter instruction ought to have been allowed.

The court refused the following instruction, proposed by the defendant: "You are instructed that if the testimony in this case in its weight and effect be such as that two conclusions can equally be drawn from it, the one favoring the defendant's innocence, and the other tending to establish his guilt, it is the duty of the jury to adopt the former and find the defendant not guilty."

The refusal to allow said instruction was not prejudicial. It merely involves an amplification of the rule of reasonable doubt, which the court in its charge declared and explained to the jury in language which could not be misunderstood.

No other questions are presented here for consideration.

The judgment and the order are affirmed.

Chipman, P. J., and Burnett, J., concurred.